```
UNITED STATES DISTRICT COURT            USDC SDNY
SOUTHERN DISTRICT OF NEW YORK           DOCUMENT
----------------------------------x     ELECTRONICALLY FILED
                                  :     DOC #:
BLAIR DAVIS-GARETT,               :     DATE FILED: 04/27/2017
                                  :
                      Plaintiff,  :
                                  :
            - against -           :     15-CV-09598 (TPG)
                                  :
                                  :             OPINION
URBAN    OUTFITTERS,    INC. and  :
ANTHROPOLOGIE, INC.,              :
                                  :
                     Defendants.  :
                                  :
                                  :
----------------------------------x
```

Pending before the court is defendants' motion for summary judgment. Plaintiff Blair Davis-Garett initiated the instant action on December 9, 2015, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (2012), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 (McKinney 2017), and Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1) (2017). Defendants now move for summary judgment on all claims, and for the reasons stated below, the court grants defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff was an hourly sales associate and apparel supervisor employed by defendants, a retail apparel chain. During the course of the thirteen months that provide the basis for plaintiff's allegations, plaintiff worked at three separate Anthropologie retail stores—the Roosevelt Field Mall Anthropologie ("Roosevelt Field Mall Store"), the White Plains Anthropologie ("White Plains Store"), and the

1

Greenwich Connecticut Anthropologie ("Greenwich Store"). ECF No. 8, at 3-11. Plaintiff worked at the Roosevelt Field Mall Store from September 2012 to January 2013, the White Plains Store from January 2013 to August 2013, and the Greenwich Store from August 2013 to October 2013. ECF No. 8, at 3-11; ECF No. 28, at 6-7, 9.

I. **Roosevelt Field Mall Store**

Plaintiff worked at the Roosevelt Field Mall Store from September 2012 to January 2013. ECF No. 8, at 3-4; ECF No. 28, at 6. Plaintiff was 54 years old when she started working at the Roosevelt Field Mall Store. ECF No. 34, at 3; ECF No. 38, at 3. She was hired as a seasonal sales associate on a part-time basis for the holiday season. ECF No. 8, at 3. Her duties included helping customers in the fitting room, answering customer questions, and assisting customers with their purchases. ECF No. 34, at 3. Plaintiff frequently worked in the fitting room, which, according to her, was the "least desirable assignment." ECF No. 8, at 3. The Roosevelt Field Mall Store closed around February 2013, and at that time, plaintiff was transferred to the White Plains Store. ECF No. 34, at 4; ECF No. 38, at 3.

II. **White Plains Store**

Plaintiff started working at the White Plains Store in January 2013 as a part-time sales associate, and started working as a full-time sales associate there in March 2013. ECF No. 34, at 4; ECF No. 38, at 3-4. She was supervised by the store manager, Kelly Bentley. ECF No. 34, at 4; ECF No. 38, at 4. In June 2013, plaintiff learned that an apparel supervisor position was available, and expressed

2

her interest in the position to Bentley. ECF No. 40, at 3. Bentley responded by telling her she was too old and that she would not get the position. ECF No. 40, at 9. In response to Bentley's comment, in June 2013, plaintiff called the 1-800-NOW-PREV hotline ("Hotline")—a toll-free, anonymous hotline created by defendants in order for employees to report their concerns. ECF No. 40, at 8-9. After calling in, plaintiff was contacted by a district manager, Amy Shearer, to discuss her complaint. ECF No. 40, at 8-9. Shearer subsequently spoke to Bentley, who denied making comments about plaintiff's age. ECF No. 34, at 5. Bentley was nonetheless issued a written warning for her behavior. ECF No. 34, at 5. The warning stated that Bentley "made comments" about plaintiff's age and "questioned her ability to have the energy to manage the sales floor." ECF No. 38, at 5.

Around June 2013, plaintiff was promoted to apparel supervisor and given a pay raise. ECF No. 34, at 4; ECF No. 38, at 4; *see also* ECF No. 29, Ex. 8. As apparel supervisor, she reported to Bentley and Kara Fitzpatrick, the apparel manager. ECF No. 34, at 4; ECF No. 38, at 4. During this time, Bentley continued to make comments to plaintiff about her age and her poor performance as an apparel supervisor, and assigned her to 10 consecutive openings and 10 consecutive closings when she was first promoted. ECF No. 34, at 4-5; ECF No. 40, at 10. Fitzpatrick also made several comments that plaintiff's pace was too slow. ECF No. 34, at 4; ECF No. 38, at 4. As apparel supervisor, plaintiff continued to work in the fitting room, and also worked at the cash register and

the front of the store. ECF No. 34, at 5; ECF No. 38, at 4. In July 2013, plaintiff again called the Hotline to report Bentley and Fitzpatrick's behavior.

In August 2013, plaintiff learned that an apparel supervisor position opened up at the Edgewater Anthropologie in New Jersey, and contacted Shearer to request a transfer. ECF No. 40, at 10. Shearer did not respond to the request, and in response plaintiff again called the Hotline. ECF No. 40, at 10-11. That September, Shearer contacted plaintiff and set up an interview with the district manager for the Edgewater store. ECF No. 34, at 6; ECF No. 40, at 5. Plaintiff interviewed for the position shortly thereafter. ECF No. 34, at 6; ECF No. 40, at 11. Plaintiff was ultimately not transferred to Edgewater, but was instead transferred to the Greenwich Store in September 2013. ECF No. 34, at 7; ECF No. 40, at 11-12.

### III. Greenwich Store

Plaintiff started working at the Greenwich Store in September 2013, reporting to Jennifer Orr. ECF No. 34, at 7; ECF No. 40, at 12. On October 3, 2013, plaintiff was in charge of closing down the store when a male customer came in and started pacing in and out of the store while on his cell phone. ECF No. 34, at 7-8; ECF No. 40, at 12. Because plaintiff was concerned about the man's behavior, she called the non-emergency number for the Greenwich Police. ECF No. 34, at 8; ECF No. 40, at 12. This was not in line with the process laid out in the "Alerting Authorities" guidelines provided to defendant's employees. ECF No. 34, at 8. The guidelines provide that an employee should not "automatically call the police or prosecute suspected shoplifters" and gives

4

specific instances warranting a call to the police. ECF No. 39, Ex. O. In response to the call, police officers came to the Greenwich Store and escorted the man out. ECF No. 34, at 8; ECF No. 38, at 7.

On October 7, 2013, plaintiff had a meeting with Orr and the Greenwich Store's visual manager about the incident. ECF No. 34, at 8; ECF No. 38, at 7. During the meeting, Orr discussed the "Alerting Authorities" policy with plaintiff, and plaintiff was issued a final warning. ECF No. 34, at 8; ECF No. 40, at 12. The warning stated that plaintiff failed to comply with company policy for alerting authorities, and that in the future plaintiff would work with her manager to "communicate any issues and troubleshoot together." ECF No. 39, Ex. N. The final warning also stated that termination was a potential consequence if her behavior did not improve. ECF No. 39, Ex. N. According to plaintiff, during the meeting she was also told that she was "done." ECF No. 40, at 12-13.

After the meeting, plaintiff left the store and did not return. ECF No. 34, at 9; ECF No. 40, at 13. On December 13, 2013, plaintiff filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging she was discriminated against based on her age, and on November 19, 2015, CHRO released jurisdiction of the charge. ECF No. 34, at 9. Plaintiff then filed the instant complaint on December 9, 2015, ECF No. 8, and defendants moved for summary judgment on February 21, 2017, ECF No. 27.

5

**STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "genuine" if, based on the evidence provided, a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, the court must draw all reasonable inferences and resolve any ambiguities in favor of the nonmoving party. *Id.* at 255; *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). Viewing the evidence in the light most favorable to the nonmoving party, the court looks at whether there are any triable issues—the allegations my not be "mere allegations or denials." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

**DISCUSSION**

**I. ADEA Claims**

Plaintiff alleges that defendants violated the ADEA, 29 U.S.C. § 623 (2012), because defendants (1) engaged in age discrimination, (2) retaliated by transferring and terminating plaintiff after she made a complaint to the Hotline, and (2) created a hostile working environment. *See* ECF No. 8, at 12.

**A. Statute of Limitations**

Claims brought pursuant to the ADEA where the claimant files with a state or local agency must be filed within 300 days of the alleged unlawful practice. 29 U.S.C. § 626(d)(1)(B). A discrete, completed act that occurs outside of the 300-

day limitations period is time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

As an initial matter, Garrett filed her Charge of Discrimination with the CHRO on December 13, 2013. ECF No. 34, at 9. Thus, Garrett's claims pertaining to incidents occurring before February 16, 2013—300 days prior to this filing date—are time barred and will not be considered for the purpose her ADEA claims. 29 U.S.C. § 626(d)(1)(B). This includes the time that Garrett worked at the Roosevelt Field Mall Store and the first month of her time at the White Plains Store.

### B. Hostile Work Environment Claim

Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on the employee's age. *Id.* § 623(a)(1).

Courts use the *McDonnell Douglas* burden-shifting framework when analyzing age discrimination claims. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Plaintiff must establish a prima facie case of discrimination, and if the plaintiff does so, the burden shifts to the defendant, who must show that there was a legitimate and nondiscriminatory reason for the action. *Id.* To establish a prima facie case of discrimination under the ADEA, the plaintiff must show that (1) he or she was part of a protected age group, (2) he or she was qualified for the position, (3) there was an adverse employment action, and (4) the action gave rise to a discriminatory inference. *Id.* at 107.

7

If a claim is based on hostile work environment, a plaintiff must show that his or her place of employment is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Plaintiffs must show that the environment was "sufficiently continuous and concerted," and that he or she was treated this way because of his or her membership in a protected class. *Id.* The incidents must be "repeated and continuous" and cannot be mere "isolated acts or occasional episodes." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992); *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."). The plaintiff must also show that the alleged conduct can be imputed to the employer. *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 638-39 (S.D.N.Y. 2011).

When determining whether a workplace is hostile, courts look both to whether a reasonable person would find the environment hostile and whether the plaintiff subjectively felt it was hostile. *Brennan*, 192 F.3d at 318. It is a totality-of-the-circumstances inquiry. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). Mere bullying is not enough to make out a claim for a hostile working environment. *De la Cruz*, 783 F. Supp. 2d at 639. Courts look to factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Pronin v. Raffi*

*Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 633 (S.D.N.Y. 2005) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)).

Plaintiff alleges that comments made by Bentley and Fitzpatrick, her managers at the White Plains Store, created a hostile work environment. ECF No. 40, at 15-19. She claims that she was relegated to the fitting room and was told that she had slow "speed" and "pace" repeatedly by both Bentley and Fitzpatrick. ECF No. 40, at 19. She also claims that she was made to close the store on 20 of the 37 days between June 26 and July 31, 2013, right after her promotion. ECF No. 40, at 19.

Although there is evidence showing that Bentley and Fitzpatrick did make some age-related remarks, these were occasional, isolated incidents. Further, plaintiff has failed to provide evidence that she was assigned to a high number of closing shifts because of her age. These incidents do not rise to the level of an environment "permeated with discriminatory intimidation, ridicule, and insult" necessary to make out a hostile working environment claim. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Although these were unquestionably offensive utterances, viewed in the totality of the circumstances, they are not enough to support the unreasonable and severe interference necessary to show a hostile work environment. Thus, the court grants defendants motion for summary judgment, dismissing plaintiff's hostile work environment claim.

## C. Retaliation Claim

Under the ADEA, it is also unlawful for an employer to retaliate against an employee who has exercised his or her right to complain about discriminatory conduct. 29 U.S.C. § 623(d). Courts also apply the *McDonnell Douglas* framework when analyzing ADEA claims for retaliation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). This requires the plaintiff to demonstrate a prima facie case for retaliation, which shifts the burden to the defendant to show that there is a nondiscriminatory reason for the action. *Vogel v. CA, Inc.*, 662 F. App'x 72, 75 (2d Cir. 2016); *Gorzynski*, 596 F.3d at 110. If the defendant does show a legitimate reason, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *Vogel*, 662 F. App'x at 75.

In order to make out a prima facie case for retaliation, a plaintiff must show (1) participation in protected activity, (2) an adverse employment action, and (3) a causal connection between engaging in the activity and the adverse employment action. *Gorzynski*, 596 F.3d at 110. To successfully show an adverse employment action, the plaintiff must show that he or she experienced a "materially adverse change" in the terms and conditions of employment, and show that the conditions were "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)). Examples of materially adverse changes include demotions, decreases in salary, and decreases in responsibility. *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000).

Plaintiff fails to make out a prima facie case for retaliation with respect to her time at defendant's stores after February 16, 2013. Although plaintiff has shown the first element necessary for retaliation—that she was engaging in a protected activity—she fails to provide sufficient evidence for the second element, adverse employment action. In fact, plaintiff was promoted twice during her time at defendant's stores, once in March 2013 when she became a full-time sales associate, and a second time in June 2013, when she was promoted to apparel supervisor. ECF No. 34, at 4; ECF No. 38, at 4.

While plaintiff alleges that her transfer to the Greenwich Store and the end of her employment relationship with defendant were both adverse employment actions, she fails to show that this was the case. Merely being transferred to a different location than requested, on its own, does not constitute an adverse employment action. *See Galabya*, 202 F.3d at 641 (stating that a transfer is only an adverse employment action if it results in a setback to one's career). There is no evidence that either one of her managers was even aware that she had made a complaint to the Hotline at the time of her transfer. Further, the written warning provided to her during her meeting with Orr did not constitute a termination because the warning clearly stated that in the future, plaintiff must work with her manager to "troubleshoot together." ECF No. 39, Ex. N. If defendant had been terminating plaintiff, there would be no future in which they could do so. Because plaintiff has not shown an adverse employment action, her claims for retaliation fail and the court grants summary judgment for defendants.

## II. NYSHRL Claims

Plaintiff also alleges hostile working environment and retaliation claims under the NYSHRL. Because ADEA and NYSHRL claims are analyzed using the same framework, the analysis above also applies to plaintiff's NYSHRL claims. *See Preuss v. Kolmar Laboratories*, Inc., 970 F. Supp. 2d 171, 184 n.14 (S.D.N.Y. 2013) ("ADEA and NYSHRL claims for hostile work environment are analyzed under the same standards . . . ."). Thus, the court grants defendant's summary judgment motion as to plaintiff's NYSHRL claims.

## III. CFEPA Claims

Plaintiff lastly alleges hostile working environment and retaliation claims under the CFEPA. Claims under the CFEPA are also analyzed under the same standards as the ADEA. *See Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 259 (D. Conn. 2013) ("CFEPA claims dealing with age are also analyzed according to corresponding federal precedent."). Because these claims are analogous to the ADEA, the court grants defendant's motion for summary judgment as to plaintiff's CFEPA claims.

## CONCLUSION

For the reasons given above, the court grants defendants' motion for summary judgment in its entirety. This Opinion resolves Docket Number 27, and the Clerk of Court is respectfully directed to close this case.

SO ORDERED

Dated: New York, New York
September 27, 2017

_____
Thomas P. Griesa
U.S. District Judge